UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PEOPLE OF THE STATE OF NEW YORK    :
by LETITIA JAMES, Attorney General of the State of   :
New York,    :
   :
                Petitioner,    :     Case No. 1:26-cv-03300
   :
       v.    :
   :
COINBASE FINANCIAL MARKETS, INC.,    :
   :
                Respondent.    :
   :
   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT
OF PETITIONER'S MOTION TO REMAND TO NEW YORK STATE COURT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................i

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

    I.   New York Has a Strong Interest in Enforcing Its Police Powers to Regulate Gambling .... 3

       A.  New York Closely Regulates Gambling ........................................................... 3

       B.  Coinbase's Unlicensed Gambling Platform Causes Harm to New York ......................... 5

ARGUMENT ................................................................................................................... 6

    I.   OAG's Special Proceeding Does Not Arise Under Federal Law ........................................ 7

       A.  New York's State Law Claims Do Not Support Federal Question Jurisdiction .............. 8

       B.  OAG's Special Proceeding Does Not Satisfy the "Slim Category" of Cases Arising Under Federal Law ................................................................................................... 9

          1.   The CEA Preemption Defense Does Not Support Removal .................................... 9
          2.   The Federal Wire Act Safe Harbor Does Not Support Removal............................. 10

    II.  OAG's State Law Claims Are Not Subject to the Doctrine of Complete Preemption....... 14

       A.  No Court Has Found that the Rare Doctrine of Complete Preemption Applies to the CEA ............................................................................................................ 15

       B.  The CEA Does Not Provide a Basis to Apply Complete Preemption ......................... 16

    III.  The CFTC Is Not a Necessary Party and Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(1)......................................................................................................... 17

    IV.  New York Is Entitled to the Expedited Relief Afforded Through Its Proceeding Authorized Under New York State Law ........................................................................... 19

    V.   The Court Should Award Petitioner Fees and Costs........................................................ 20

CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Aetna Health Inc. v. Davila*,
    542 U.S. 200, 209 (2004) ................................................................................15

*Ah Sin v. Wittman*,
    198 U.S. 500 (1905) .......................................................................................14

*Akers v. Barrett*,
    No. 14-CV-501-A, 2014 U.S. Dist. LEXIS 104389 (W.D.N.Y. July 30, 2014) .....................21

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
    136 F. 4th 32 (2d Cir. 2025) ........................................................................8, 10

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
    795 F.3d 351 (2d Cir. 2015).............................................................................19

*Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*,
    368 F.3d 86 (2d Cir. 2004)............................................................................6, 13

*Calingo v. Meridian Res. Co., LLC*,
    No. 11-cv-628 VB, 2012 U.S. Dist. LEXIS 175433 (S.D.N.Y. Oct. 26, 2012) .....................18

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987)........................................................................8, 9, 11, 14

*CFTC v. New York et al.*,
    26-cv-3404 (S.D.N.Y Apr. 24, 2026) ...................................................................12

*City of New York v. Exxon Mobil Corp.*,
    733 F. Supp. 3d 296 (S.D.N.Y. 2024)...................................................................11

*Commonwealth v. KalshiEX LLC*,
    No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) ...........................................................15

*Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC*,
    No. 24-CV-326 (VSB), 2024 U.S. Dist. LEXIS 25890 (S.D.N.Y. Feb. 14,
    2024) ................................................................................................10

*Connecticut v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ........................................................................8, 10

*Counsel Fin. Holdings v. Law*,
    No. 20-CV-01698 (LJV) (JJM), 2021 U.S. Dist. LEXIS 16920 (W.D.N.Y.
    Jan. 27, 2021).....................................................................................20-21

*Cruz v. Doar*,
    994 N.Y.S.2d 233 (Sup. Ct. N.Y. Cnty. 2013) ........................................................................18

*Davidson v. Capuano*,
    792 F.2d 275 (2d Cir. 1986).........................................................................................................20

*Dela Rosa v. 610-620 W. 141 LLC*,
    08 Civ. 8080 (PKL), 2009 U.S. Dist. LEXIS 55058 (S.D.N.Y. June 24, 2009) .....................20

*Dyno v. Rose*,
    260 A.D.2d 694, 687 N.Y.S.2d 497 (3d Dep't 1999) ..............................................................18

*Farmers Co-op Elevator v. Doden*,
    946 F. Supp. 718 (N.D. Iowa 1996)............................................................................................15

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
    463 U.S. 1 (1983).............................................................................................................................7

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)...............................................................................................................7, 8, 10

*Gunn v. Minton*,
    568 U.S. 251 (2013).....................................................................................................................7, 12

*Hinterberger v. Catholic Health Sys.*,
    548 Fed. App'x. (2d Cir. 2013).....................................................................................................14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007)............................................................................................................6

*In re Standard & Poor's Rating Agency Litig.*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014)........................................................................................6, 20

*Jim Ludtka Sporting Goods, Inc. v. City of Buffalo Sch. Dist.*,
    48 A.D.3d 1103 (4th Dep't 2008)........................................................................................... 17-18

*Llana v. Town of Pittstown*,
    245 A.D.2d 968, 667 N.Y.S.2d 112 (3d Dep't 1997) ..............................................................18

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005).......................................................................................................................20

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987).........................................................................................................................15

*Murphy v. NCAA*,
    584 US 453 (2018)......................................................................................................................4, 14

*NASDAQ OMX Group, Inc. v. UBS, Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)..................................................................................... 10-11

*Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*,
    No. 3:26CV00089-MMD-CLB, 2026 U.S. Dist. LEXIS 41671 (D. Nev. Mar.
    2, 2026) ...............................................................................................................................19

*Nevada ex rel. Nevada Gaming Control Bd. v. Kalshiex, LLC*,
    No. 2:26-cv-00406-MMD-MDC, 2026 U.S. Dist. LEXIS 41964 (D. Nev. Mar.
    2, 2026) ...............................................................................................................10, 16, 18

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ...............................................................................................6

*New York by James v. Citibank, N.A.*,
    763 F. Supp. 3d 496 (S.D.N.Y. 2025)..................................................................................8

*New York by James v. Sirius XM Radio, Inc.*,
    735 F. Supp. 3d 272 (S.D.N.Y. 2024)...............................................................................6, 9

*New York v. DailyPay, Inc.*,
    No. 25-cv-3439 (JGK), 2025 U.S. Dist. LEXIS 186217 (S.D.N.Y. Sep. 19,
    2025) .......................................................................................................................... passim

*New York v. MoneyLion Inc.*,
    No. 25-cv-4093 (CM), 2025 U.S. Dist. LEXIS 222399 (S.D.N.Y. Nov. 12,
    2025) ...................................................................................................................................9

*New York v. Nat'l Gen. Holdings Corp.*,
    No. 25-cv-3608, 2025 U.S. Dist. LEXIS 212731 (S.D.N.Y. Oct. 28, 2025)............................9

*New York v. Shinnecock Indian Nation*,
    686 F.3d 133 (2d Cir. 2012)...............................................................................................10

*People v. World Interactive Gaming Corp.*,
    185 Misc. 2d 852 (Sup. Ct., N.Y. Cnty. 1999) .......................................................................13

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013)................................................................................................6

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020)....................................................................................9

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976)..........................................................................................................13

*Rubin v. MasterCard Int'l, LLC*,
    342 F. Supp. 2d 217 (S.D.N.Y. 2004).....................................................................................6

iii

*Saratoga Cnty. Chamber of Commerce, Inc. v. Pataki*,
  100 N.Y.2d 801 (2003) ..............................................................................................3, 14

*Sea Green Holdings, LLC v. Angera*,
  No. 3:18-cv-0264 (MPS), 2018 U.S. Dist. LEXIS 61275 (D. Conn. Apr. 11,
  2018) ..........................................................................................................................21

*Solomon v. St. Joseph Hosp.*,
  62 F.4th 54 (2d Cir. 2023) ............................................................................... passim

*United States v. Cohen*,
  260 F.3d 68 (2d Cir. 2001).........................................................................................11

*United States v. Eremian*,
  No. 10-10159-PBS, 2012 U.S. Dist. LEXIS 63215 (D. Mass. May 4, 2012) ..........................11

*United States v. Mayo*,
  705 F.2d 62 (2d Cir. 1983).........................................................................................11

*W. Flagler Assocs., Ltd. v. Haaland*,
  71 F.4th 1059 (D.C. Cir. 2023).................................................................................12

*In re WTC Disaster Site*,
  414 F.3d 352 (2d Cir. 2005).......................................................................................14

*Wallace v. Wiedenbeck*,
  985 F. Supp. 288, 291 (N.D.N.Y. 1998)....................................................................21

**CONSTITUTIONS**

NY Const. Art I, § 9................................................................................................ passim

**FEDERAL STATUTES**

7 U.S.C. § 2(a)(1)(A) ................................................................................................16

18 U.S.C.
  § 1084......................................................................................................................15
  § 1084(a) ........................................................................................................ passim
  § 1084(b)...............................................................................................................3, 11

28 U.S.C.
  § 1331.........................................................................................................................7
  § 1442.....................................................................................................................3, 19
  § 1442(a)(1) ............................................................................................................17
  § 1447.........................................................................................................................1
  § 1447(c) ...........................................................................................................3, 7, 20

Federal Rule of Civil Procedure 19(a) .................................................................................18

**STATE STATUTES**

*CPLR*
  Article 4 ..............................................................................................................................1
  § 1001...........................................................................................................................17, 18
  § 1001(a)(1) ........................................................................................................................17

*New York Executive Law*
  § 63(12)........................................................................................................................ passim

*New York Penal Law*
  § 225.00(2)...........................................................................................................................4
  § 225.05.............................................................................................................................1, 3
  § 225.10.............................................................................................................................1, 3
  § 225.15.................................................................................................................................3
  § 225.20.............................................................................................................................1, 3

*New York Racing, Pari-Mutuel Wagering and Breeding Law*
  § 104(1)................................................................................................................................4
  § 104(24)..............................................................................................................................4
  § 1367...................................................................................................................................4
  § 1367(1)(j)..........................................................................................................................4
  § 1367(1)(s)..........................................................................................................................5
  § 1367(1)(x).........................................................................................................................4
  § 1367(2)(d).........................................................................................................................4
  § 1367(16)(a) .......................................................................................................................1
  § 1367-a ...............................................................................................................................4
  § 1367-a(2)(a) ......................................................................................................................1
  § 1367-a(2)(d) ......................................................................................................................4
  § 1367-a(4)(a)(iii) ................................................................................................................4
  § 1367-a(4)(b).......................................................................................................................1
  § 1367-a(4)(e) ......................................................................................................................4

**RULES**

9 NYCRR
  §§ 5300-5330.45 ..................................................................................................................5
  § 5325.6.................................................................................................................................4
  § 5329.37...............................................................................................................................4
  § 5330.34...............................................................................................................................4
  § 5330.45...............................................................................................................................4

**MISCELLANEOUS AUTHORITIES**

7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 3722.2 (4th ed. 2012) ................................................................................................14

H.R. Rep No. 87-967 (1961) ..........................................................................................13

Reconsidering Whether the Wire Act Applies to Non-Sports Gambling, Vol 42
Op. Off. Legal Counsel 158 (2018) .............................................................................15

Petitioner, People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), submits this memorandum of law in support of its motion to remand this case to the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1447.

## PRELIMINARY STATEMENT

On April 21, 2026, OAG filed a verified petition (ECF No. 1-2 (the "Petition" or "Pet.")) in New York state court commencing a special proceeding under New York Civil Practice Law and Rules Article 4 ("Special Proceeding") against Respondent Coinbase Financial Markets, Inc. ("Coinbase"). The Petition alleges violations of New York State Executive Law § 63(12) for repeated and persistent illegal conduct in the carrying on of business.[1] Pet. ¶ 12. OAG seeks a temporary restraining order ("TRO") and a preliminary and permanent injunction to enjoin Coinbase from operating an unlicensed gambling business that allows bettors in New York and elsewhere to gamble on a variety of sports and other events.

Coinbase attempts to evade New York laws by engaging in what is quintessentially gambling (e.g., a bet on whether the New York Knicks will win a basketball game by over 6.5 points) under the guise of offering for sale "event contracts" on a "prediction market." *Id.* ¶¶ 7-8. Coinbase permits bettors under the age of 21 to open an account and allows wagering by minors between the ages of 18 and 21 on its Platform, despite New York's prohibition on offering mobile sports wagering to minors under the age of 21. *Id.* ¶¶ 27, 63. Coinbase also offers gambling on sports events in which New York college teams participate, despite New

---

[1] Specifically, the Petition alleges repeated and persistent illegal conduct under Section 63(12), with underlying illegalities as violations of New York State Constitution Article I, Section 9; New York Penal Law §§ 225.05, 225.10, and 225.20; New York Racing, Pari-Mutuel Wagering and Breeding Law §§ 1367(16)(a), 1367-a(2)(a), and 1367-a(4)(b) (hereinafter "Racing Law"); and 18 U.S.C. § 1084(a) (the "Wire Act"). Pet. ¶ 12.

York law prohibiting such wagers. *Id.* ¶¶ 28, 34, 45. Coinbase operates without the supervision of the New York State Gaming Commission or the restrictions and controls required by New York of mobile sports wagering operators. *Id.* ¶¶ 78, 86. Coinbase also evades New York state taxes, including mobile sports wagering taxes primarily used for public school funding, sports programs for underserved youth, and problem gambling education and treatment. *Id.* ¶ 29.

OAG sues under express authority conferred upon her by New York Executive Law § 63(12), which empowers OAG to bring actions in the name of the People for injunctive relief and civil penalties, among other remedies when a business has been engaged in repeated or persistent illegal conduct. OAG also sues to vindicate the New York's quasi-sovereign interest in securing a safe marketplace in which to transact business, seeking wide-ranging relief under statutes that are aimed at protecting the well-being of all who reside or do business in New York. These are clearly quasi-sovereign interests which New York has a real and substantial concern in protecting.

On April 21, 2026, Coinbase improperly removed OAG's Petition from state court to avoid the speedy resolution of this Special Proceeding under state procedures, buying time to make more profits off its illegal gambling operation at the expense of vulnerable New Yorkers. *See* ECF No. 1 ("Notice of Removal").

As explained further below, there is no valid basis for removal. Coinbase incorrectly claims that federal question jurisdiction exists, but OAG's eight causes of action for violations of Executive Law § 63(12) are all state law claims. Coinbase also makes various arguments that OAG's claims necessarily raise substantial questions of federal law, but these arguments boil down to an anticipated potential defense of preemption of state law by the Commodity Exchange Act ("CEA"), and the Supreme Court has made clear that such defenses are not a basis for

removal.  Coinbase also attempts to conjure a substantial question concerning the Wire Act's

safe harbor provision, 18 U.S.C. § 1084(b), but, as the Second Circuit has conclusively stated,

the safe harbor does not cover the conduct Coinbase is charged with – accepting interstate bets.

Coinbase also raises the doctrine of "complete preemption" and the federal officer removal

statute, 28 U.S.C. § 1442, but they are inapplicable here.

In sum, this proceeding is brought by New York using a New York procedure and asserts

claims under New York State law to stop ongoing and persistent violations of New York's

gambling laws by a New York company.  Any incidental federal questions are insufficient bases

upon which to interfere with the role of New York courts in overseeing this proceeding.  The

Court should therefore summarily remand this Special Proceeding back to the Supreme Court of

the State of New York, County of New York and grant costs, expenses, and attorneys' fees to the

State pursuant to 28 U.S.C. § 1447(c), for Coinbase's legally unsupported removal.

**BACKGROUND**

I.    **New York Has a Strong Interest in Enforcing Its Police Powers to Regulate Gambling**

A.    **New York Closely Regulates Gambling**

New York has policed gambling within its borders for over 250 years, since 1771.  *See*

*Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 825-830 (2003)

(Smith, J., concurring in part) (history of New York's anti-gaming laws).  The New York

Constitution prohibits gambling in all forms not specifically enumerated in Article I.  New

York's Penal Law has long criminalized the promotion of gambling activity, Penal Law §§

225.05, 225.10, and possession of gambling records, Penal Law §§ 225.15, 225.20.  The Penal

Law prohibits as gambling when a person "stakes or risks something of value upon the outcome

of a contest of chance or a future contingent event not under his control or influence, upon an

3

agreement or understanding that he will receive something of value in the event of a certain outcome." Penal Law § 225.00(2).

In 2019, following the U.S. Supreme Court's recognition of states' rights to authorize and regulate sports wagering within their borders, *see Murphy v. NCAA,* 584 U.S. 453 (2018), New York enacted a comprehensive regulatory regime for mobile sports wagering. *See* Racing Law §§ 1367, 1367-a. The Racing Law defines sports wagering as "wagering on sporting events or any portion thereof, or on the individual performance statistics of athletes participating in a sporting event . . . by any system or method of wagering . . . ." Racing Law § 1367(1)(x).

The New York State Gaming Commission has general jurisdiction over all gaming activities within New York and regulates sports wagering and entities engaged in it. Racing Law §§ 104(1), (24). Mobile sports wagers made through virtual or electronic means must be made through mobile sports wagering licensees, and New York's nine mobile sports licensees are subject to significant statutory and regulatory requirements under Section 1367-a of the Racing Law. *See* Racing Law §§ 1367(2)(d), 1367-a(2)(d). For example, New York prohibits sports wagering by minors under the age of 21 (Racing Law §§ 1367(2)(d), (1)(j)) and requires each mobile sports wagering operator to "prohibit minors from participating in any sports wagering …." Racing Law § 1367-a(4)(a)(iii). Moreover, the state restricts advertising, marketing, and promoting mobile sports wagering to underage persons, including prohibiting advertising set on college campuses, depicting students, and other restrictions. Racing Law § 1367-a(4)(e); 9 NYCRR §§5329.37, 5330.45. Additionally, all advertisements must display clear information and provide easy access to resources like 1-877-8-HOPENY. 9 NYCRR §§ 5325.6, 5329.37, 5330.34.

New York also prohibits sports wagering on events in which New York college teams participate, and even duly licensed mobile sports wagering licensees are prohibited from offering such wagering.  Racing Law § 1367(1)(s).

New York taxes mobile sports wagering licensees at a rate of approximately 51% of gross revenues and uses this revenue for public school funding as well as sports programs for underserved youth and problem gambling education and treatment.  Pet. ¶ 29.  In 2024, mobile sports wagering operators generated approximately $2 billion in gross gaming revenue, paying more than $1 billion in state taxes to New York.  *Id.*

### B.    Coinbase's Unlicensed Gambling Platform Causes Harm to New York

Coinbase harms New York by offering wagers on its Platform because it operates without implementing required consumer protections and internal controls that are part of New York's strict regulation of licensed gambling.  *Id.* ¶ 78.  These protections include allocating resources to develop and fund programs to combat problem gambling, procedures to prevent underage gambling, restrictions to prevent predatory or deceptive advertising, procedures to identify bettors battling a gambling addiction, and guardrails to allow consumers to exclude themselves from the Platform.  *See generally* 9 NYCRR §§ 5300-5330.45; Pet. ¶ 78.  These and other numerous safety regulatory mechanisms exist for vital reasons: gambling causes real and significant harm to vulnerable populations.  For example, individuals aged 18-24 are a "high-risk population" for gambling addictions, gambling addiction increases the risk of suicide, and prediction markets create significant risks to the financial well-being of consumers.  *See* Pet. ¶¶ 80-85.  These are precisely the dangers the New York Constitution and New York gambling laws were intended to prevent.  Coinbase's unlicensed gambling platform and its willful disregard of

5

responsible gambling requirements for licensed sports wagering operations expose New Yorkers to gambling harm with few, if any, safeguards.

## ARGUMENT

Where, as here, jurisdiction is asserted by a respondent in a removal petition, the respondent bears the burden of establishing that removal is proper. *Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004). Any doubts as to removability are resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *accord Rubin v. MasterCard Int'l, LLC*, 342 F. Supp. 2d 217, 218 (S.D.N.Y. 2004) ("Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum"); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.") (quotations omitted).

The presumption against federal jurisdiction is "especially strong" in cases, like this one, involving a state seeking to vindicate its sovereign and quasi-sovereign interests in enforcing its own state laws and in protecting its own citizens. *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014); *New York v. DailyPay, Inc.,* No. 25-cv-3439 (JGK), 2025 U.S. Dist. LEXIS 186217, at *6 (S.D.N.Y. Sep. 19, 2025); *New York by James v. Sirius XM Radio, Inc.*, 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (holding that where attorney general brings an action in state court to enforce its own state laws and alleges only state law causes of action to protect state

residents, the "claim of sovereign protection from removal arises in its most powerful form" (internal quotation marks omitted)).  As the Supreme Court has explained: "[C]onsiderations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."  *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).

Here, OAG seeks to vindicate the State's sovereign and quasi-sovereign interests in enforcing its Executive Law and protecting New Yorkers.  The Court must remand this case back to the Supreme Court of the State of New York where it was originally brought.  28 U.S.C. § 1447(c).

## I.    OAG's Special Proceeding Does Not Arise Under Federal Law

Coinbase's argument that federal jurisdiction arises in this case because New York's claims necessarily depend on the resolution of substantial questions of federal law fails.  District courts have original jurisdiction in matters "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has held that a case can "arise under" federal law in two ways.  *Gunn v. Minton*, 568 U.S. 251, 257-58 (2013).  First, is when "federal law creates the cause of action asserted."  *Id.* (citation omitted).  Second, even if no federal cause of action is asserted, there is a "special and small category of cases in which 'arising under' jurisdiction . . . . will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress," (hereinafter, the "*Grable-Gunn* test").  *Id.; see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *accord DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, at *7.  To satisfy the second "slim category," all four factors outlined in the *Grable-Gunn* test must be met.  *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS

186217, *7 (citing *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 38 & n.6 (2d Cir. 2025)).

### A.  New York's State Law Claims Do Not Support Federal Question Jurisdiction

Under the first category of federal cases, a matter "arises under" federal law when a plaintiff pleads a cause of action created by or under federal law.  *DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *7 (citing *Grable*, 545 U.S. at 312).  Under the well-pleaded complaint rule, "federal question jurisdiction generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  *DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *7 (quoting *Connecticut v. Exxon Mobil Corp*., 83 F.4th 122, 132 (2d Cir. 2023)); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The plaintiff may avoid federal jurisdiction by pleading only state law causes of action.  *Exxon Mobil*, 83 F.4th at 132 (holding that plaintiff is "the master of the claim . . . [and] may avoid federal jurisdiction by exclusive reliance on state law." (internal quotation and citation omitted)).

OAG's Petition does not affirmatively allege any cause of action created by federal law. OAG's Petition alleges only state law causes of action, specifically violations of New York Executive Law § 63(12), which authorizes the Attorney General to seek injunctive relief, restitution, and damages in New York state court when a person "engage[s] in repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business."  N.Y. Exec. L. § 63(12).  Under New York Executive Law § 63(12), "any conduct [that] violates state or federal law is actionable."  *DailyPay, Inc*., 2025 U.S. Dist. LEXIS 186217, at *7; *New York by James v. Citibank, N.A.,* 763 F. Supp. 3d 496, 507 (S.D.N.Y. 2025).

State law claims with predicate violations of federal law remain state law claims. *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, at *8-9 (*citing Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414-15 (S.D.N.Y. 2020)).  Therefore, causes of action alleging violations of New York Executive Law § 63(12), even when predicated on a violation of a federal law, such as the Wire Act, 18 U.S.C. § 1084(a), remain state law claims.  *See id.* at *9 (*citing See Sirius XM Radio*, 735 F. Supp. 3d at 276); *New York v. MoneyLion Inc.*, No. 25-cv-4093 (CM), 2025 U.S. Dist. LEXIS 222399, at *6 (S.D.N.Y. Nov. 12, 2025) (Section 63(12) claims premised on the Consumer Financial Protection Act are not federal claims); *New York v. Nat'l Gen. Holdings Corp.,* No. 25-cv-3608, 2025 U.S. Dist. LEXIS 212731, at *3 (S.D.N.Y. Oct. 28, 2025) (finding same premised on the Gramm-Leach-Bliley Act).  OAG alleged no causes of action based on federal law; therefore, this Special Proceeding does not "arise under" federal law.

> **B.      OAG's Special Proceeding Does Not Satisfy the "Slim Category" of Cases Arising Under Federal Law**
>
> **1.   The CEA Preemption Defense Does Not Support Removal**

While OAG alleges no federal causes of action, Coinbase nevertheless argues that substantial questions of federal law exist because it intends to argue that the CEA preempts state gambling laws.  But the Supreme Court has long made clear that federal defenses, including preemption arguments, do not create federal question jurisdiction even if the defense is anticipated in the plaintiff's complaint.  *Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (emphasis in original).  "[The] Supreme Court has left no doubt that a case may not be removed to federal

court, simply because the defendant may raise the defense of ordinary preemption." *Exxon Mobil*, 83 F.4th at 135-36 (cleaned up); *see also New York v. Shinnecock Indian Nation*, 686 F.3d 133, 139 (2d Cir. 2012) ("Because the complaint's references to federal law only anticipate and refute [the defendant's] defenses, they do not give rise to federal question jurisdiction."); *Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC*, No. 24-CV-326 (VSB), 2024 U.S. Dist. LEXIS 25890, at *7 (S.D.N.Y. Feb. 14, 2024) (finding defendant's argument that plaintiff's New York state law claim implicates "substantial constitutional issues" were federal defenses to the complaint and "federal defenses are not grounds for removal"); *Nevada ex rel. Nevada Gaming Control Bd. v. Kalshiex, LLC*, No. 2:26-cv-00406-MMD-MDC, 2026 U.S. Dist. LEXIS 41964, at *8 (D. Nev. Mar. 2, 2026) (finding prediction market's argument that the CEA preempted state gambling law claims did not provide grounds for removal). And Coinbase's arguments concerning complete preemption as an exception to this rule fail for the reasons stated below. Accordingly, Coinbase's CEA defense does not provide a basis for removal.

### 2. The Federal Wire Act Safe Harbor Does Not Support Removal

Coinbase cannot establish, as argued in its Notice of Removal, that OAG's causes of action under New York Executive Law § 63(12) for repeated and persistent violations of the Wire Act, 18 U.S.C. § 1084(a), necessarily depend on substantial questions of federal law. As noted above, all of OAG's claims are state law claims under Executive Law § 63(12) and the "mere need to apply a federal law in a state-law claim will [not] suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. Rather, a defendant must establish that plaintiff's claim "really and substantially involves a dispute or controversy respecting the validity, construction or effect of federal law." *Id.* (cleaned up). "[M]ost federal law questions raised in connection with

10

state law claims will not be deemed substantial." *NASDAQ OMX Group, Inc. v. UBS, Sec., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014).

Coinbase makes two claims as to why the Wire Act involves a disputed and substantial question under federal law. First, Coinbase argues that resolution of the claim will require interpretation of the Wire Act's safe harbor provision, 18 U.S.C. § 1084(b). Second, Defendant claims that there is a substantial question as to the "interplay between [the Wire Act] and the CEA." Dkt. 1 at 7 (Notice of Removal). Neither of these issues satisfy the *Grable-Gunn* test.

Coinbase's safe harbor argument relies on a potential affirmative defense. *See United States v. Eremian,* No. 10-10159-PBS, 2012 U.S. Dist. LEXIS 63215, at *12 (D. Mass. May 4, 2012) ("[18 U.S.C. § 1084(b)] safe harbor provision constitutes an affirmative defense."); *see also United States v. Mayo*, 705 F.2d 62, 75 (2d Cir. 1983) (finding that exceptions to laws that do not negate any element of a crime are an affirmative defense). As stated above, the Supreme Court has conclusively determined that federal defenses are not to be considered under the *Grable-Gunn* factors. *Caterpillar*, 482 U.S. at 393; *see also City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 314 (S.D.N.Y. 2024) ("The fact that Defendants may have a [federal] defense . . . is not adequate to establish the *Grable* exception.").

Not only does the safe harbor fail to raise a substantial question of federal law, but it is also inapplicable here. The safe harbor only applies to the providing of betting information, but not the receipt of bets. 18 U.S.C. § 1084(b);[2] *United States v. Cohen,* 260 F.3d 68, 73 (2d Cir. 2001) (safe harbor applies if "(1) betting is legal in both the place of origin and the destination of

---

[2] 18 U.S.C. § 1084(b) provides:

> Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State or foreign country where betting on that sporting event or contest is legal into a State or foreign country in which such betting is legal.

the transmission; and (2) the transmission is limited to mere information . . . .").[3]  Accordingly, because OAG has alleged that Coinbase accepts interstate bets and not merely transmits information (*see* Pet., Eighth Cause of Action), interpretation of the safe harbor is unnecessary and this cause of action therefore does not raise a substantial question of federal law.[4]

Nor does OAG's cause of action predicated on the violation of the Wire Act raise a substantial federal question on its face.  The question of whether Coinbase's bets or wagers violate the Wire Act is a simple factual question which involves the application of the law to a simple set of facts.  *See DailyPay, Inc.,* 2025 U.S. Dist. LEXIS 186217, at *17.

Coinbase's contention concerning the "interplay between [the Wire Act] and the CEA" and the CFTC's jurisdiction fares no better.[5]  This argument also implicates a defense to the Wire Act, like the preemption defense discussed above, and thus asks this Court to consider issues away from the face of the "well-pleaded complaint."  *See id.* at *13 (rejecting removal based on substantial questions "not necessarily raised by the plaintiffs' affirmative claims . . . .").  Further, although Coinbase cites to *Gunn* for the proposition that the CEA's applicability to this case may affect the validity of the Wire Act and thus raise a federal question, in *Gunn* the Supreme Court noted that a substantial federal question exists where the "constitutional validity

---

[3] Respondent relies on *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023), to argue that bets placed to and from states where betting is lawful fall within the safe harbor of Section 1084(b).  But the D.C. Circuit was addressing whether an Indian Gaming Regulatory Act compact was invalid because it authorized a violation of the Wire Act.  *Id.* at 1069.  Although the court stated in dicta that the safe harbor applied to bets, the court did not actually address Section 1084(b)'s applicability because hypothetical violations of federal law were not relevant to the validity determination.  *Id.*  In any event, the Second Circuit has squarely addressed this issue as stated above.

[4] To the extent Respondent argues that the safe harbor applies because of the preemptive effect of the CEA, this argument relies on a preemption defense not appropriate for consideration under the *Grable-Gunn* test as noted above.  *See, supra*, Part I.B.1.

[5] Although the CFTC has filed an injunctive action against New York and various other parties, pointing to OAG's action in this matter, notably the CFTC does not raise any arguments as to the Wire Act in its complaint.  *See* Complaint for Injunctive and Declaratory Relief, ("CFTC Complaint") *CFTC v. New York, et al.*, No. 26-cv-3404 (S.D.N.Y Apr. 24, 2026), ECF No. 1.

of an act of Congress" is raised.  No question as to the constitutionality of the Wire Act exists here.  Nor is there any serious question raised as to the validity of the Wire Act on its face. Moreover, given that 18 U.S.C. § 1084 directly addresses wagering as charged by the OAG, and specifically sports wagering, the Wire Act claims cannot be nullified by the more general provisions of the CEA related to trading of derivative instruments generally on a designated contract market.  *See Cal. Pub. Emples. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 101 (2d Cir. 2004) ("'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'") (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)).

The final *Grable-Gunn* factor, disruption of federal/state balance, weighs in favor of remand.  OAG's state law claim implicating the Wire Act is one of eight causes of action brought by the State relating to gambling.  The Wire Act itself was enacted to "assist various States . . . in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses."  H.R. Rep No. 87-967, at 1-2 (1961); *see also People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852, 861-62 (Sup. Ct., N.Y. Cnty. 1999) (noting the legislative history and applying the Wire Act to betting in New York under Section 63(12)).  And resolution of this single cause of action may have minimal effect on the ultimate relief granted to OAG under its multiple gambling law claims.

In contrast, giving due consideration to the well-pleaded complaint rule, Coinbase raises no issue concerning the Wire Act that, for example, would result in "interpretation of federal law that would be controlling in numerous other cases," or would tend to "affect[] the government's practices in other cases."  *DailyPay, Inc.,* 2025 U.S. Dist. LEXIS 186217, at 16-17 (internal citations and quotations omitted).  Under these circumstances, the enforcement of this action is a

13

police power that should be left to resolution in state court. *See, e.g., Murphy v. NCAA*, 584 U.S. at 453, 458–59 (2018) (describing history of state gambling laws); *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state."); *Saratoga Cnty.*, 100 N.Y.2d at 825-30 (Smith, J., concurring in part) (noting that New York's interest in regulation of gambling spans over 250 years).

## II.    OAG's State Law Claims Are Not Subject to the Doctrine of Complete Preemption

Coinbase incorrectly asserts that this Court has subject matter jurisdiction over OAG's claims due to the doctrine of complete preemption. Complete preemption is an exception to the well-pleaded complaint rule that occurs in the exceedingly rare case when "a federal statute preempts and replaces all state-law causes of action so 'a claim which comes within the scope of that [federal] cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023) (quoting *In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005)). In those exceptional circumstances, "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 393). Federal law "substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Hinterberger v. Catholic Health Sys.*, 548 Fed. App'x. 3, at 4-5 (2d Cir. 2013) (quoting 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3722.2 (4th ed. 2012)).

To establish complete preemption, it must be shown that the CEA "preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." *Solomon*, 62 F.4th at 61-62 (citation omitted). If that were established, Coinbase would further have to show that OAG's state law claims for violations of New York Executive Law

14

§ 63(12) are "within the scope" of that federal cause of action. *See id.* at 61 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). Neither of these requisite elements are present here, and complete preemption therefore does not apply.

### A. No Court Has Found that the Rare Doctrine of Complete Preemption Applies to the CEA

The Supreme Court has identified only three instances of complete preemption: Section 301 of the Labor Management Relations Act, Section 502(a)(1)(B) of ERISA, and Sections 85 and 86 of the National Bank Act.[6] *Solomon*, 62 F.4th at 60 n.2. Courts that have considered whether the CEA has the requisite "extraordinary" preemptive force for the doctrine of complete preemption to apply have all concluded it does not. *Nevada v. Kalshiex,* 2026 U.S. Dist. LEXIS 41964, at *13 (finding no congressional intent for the CEA to completely displace state law claims); *Commonwealth v. KalshiEx LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (ECF No. 34) (CEA and its legislative history lack the requisite "clear Congressional intent to displace state regulation"); *Farmers Co-op Elevator v. Doden*, 946 F. Supp. 718, 728-29 & n.4 (N.D. Iowa 1996) (noting that CEA did not have the "necessary 'extraordinary' preemptive force" required for complete preemption). Coinbase's notice of removal provides no basis to reach a different conclusion here. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) (cautioning that courts should "be reluctant to find that extraordinary pre-emptive power . . . that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule").

---

[6] The Second Circuit has identified two other instances, none of which involve any portion of the CEA. *Solomon*, 62 F.4th at 60 n.2.

### B.    The CEA Does Not Provide a Basis to Apply Complete Preemption

Coinbase points to 7 U.S.C. § 2(a)(1)(A), claiming that its language granting "exclusive jurisdiction" to the CFTC completely preempts all state laws, including areas of traditional state police powers such as regulating gambling.  But this provision in no way establishes clear congressional intent to displace all state causes of action conceivably related to swaps executed on designated contract markets ("DCM").  In fact, Section 2(a)(1)(A) makes clear the opposite is true.  Among other things, Section 2(a)(1)(A) contains a savings clause that states: "[N]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States on the courts of the United States *or any State*."  7 U.S.C. § 2(a)(1)(A) (emphasis added).  This savings clause confirms Congress' intent to preserve state law causes of action.  *Nevada v. Kalshiex,* 2026 U.S. Dist. LEXIS 41964, at \*13 ("Under a plain reading of the clause, Congress did not express a clear intent to 'completely displace ordinarily applicable state law.'").  Furthermore, while Coinbase is free to argue on remand about how its unlicensed peddling of sports and other types of gambling amounts to "transactions involving swaps . . . traded or executed" on a DCM, *see* 7 U.S.C. § 2(a)(1)(A), such arguments speak only to a potential affirmative defense of ordinary preemption (which is not a basis for removal, *see supra* Part I.B.1) and are insufficient to show any clear congressional intent to preempt all state causes of action, including matters involving core state police powers such as regulating gambling.

Moreover, even if 7 U.S.C. § 2(a)(1)(A) completely displaced all state law causes of action, Coinbase's invocation of complete preemption would still fail because the CEA does not provide an alternative federal cause of action that serves as a substitute for OAG's state law claims.  *See Solomon*, 62 F.4th at 61 (no complete preemption where federal PREP Act did not create any federal cause of action that might encompass plaintiff's state-law claims for

16

malpractice, negligence, and gross negligence).  Although Coinbase baldly asserts that this is the case (Notice ¶ 21), it fails to identify any such substitute cause of action.  Nor can it, because there is none.  OAG seeks to protect the public from the multitude of risks and harms caused by Coinbase's unlicensed platform offering mobile sports wagering and other gambling.  The CEA is not a gaming statute, and nothing in the CEA provides a cause of action to allow OAG to remedy the harm suffered.  Furthermore, because the CEA provides no alternative cause of action, Coinbase cannot show that OAG's claims are "within the scope" of such a federal cause of action.  *See Solomon*, 62 F.4th at 61 (state law claims for medical malpractice, negligence, and gross negligence not "within the scope" of federal cause of action for willful misconduct).

In sum, the doctrine of complete preemption does not provide subject matter jurisdiction here and, accordingly, remand is warranted.

## III.    The CFTC Is Not a Necessary Party and Removal Is Not Warranted Under 28 U.S.C. § 1442(a)(1)

Coinbase contends without merit that the CFTC is a necessary party under CPLR § 1001, and that had OAG named the CFTC as a defendant, this Court would have jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Notice ¶ 22.  Pursuant to CPLR § 1001(a)(1), a party is a necessary party if: (i) it would "be inequitably affected by a judgment in the action" or (ii) its presence is required for the court to provide "complete relief … between the persons who are parties to the action."  *Accord* Fed. R. Civ. P. 19(a).  Neither of these concerns are present here.

With respect to the first prong, New York courts have held that unnamed parties are "inequitably affected" only where they have concrete interests or rights that could be adversely impacted by a judgment rendered in their absence.  *See, e.g., Jim Ludtka Sporting Goods, Inc. v. City of Buffalo Sch. Dist.*, 48 A.D.3d 1103, 1104 (4th Dep't 2008) (apparel company with school

contract was necessary party where "relief sought, i.e., nullifications of its contract with respondents, would inequitably affect its rights"); *Llana v. Town of Pittstown*, 245 A.D.2d 968, 968–69 (3d Dep't 1997) (property owners were indispensable parties in case challenging local zoning law that would inequitably affect their rights); *Dyno v. Rose*, 687 N.Y.S.2d 497, 500 (3d Dep't 1999) (landowner was necessary party in action by neighbor seeking a default judgment and preliminary injunction against him which would inequitably affect his rights).

Notwithstanding its position with respect to its jurisdiction under the CEA, the CFTC has no concrete interest or right in the outcome of this proceeding. OAG has not sought to enforce any claim against the CFTC, and the CFTC faces no legal exposure from the outcome of this matter. *See generally* Petition, ECF No. 1-2; *see also Nevada v. Kalshiex*, 2026 U.S. Dist. LEXIS 41964, at \*14-15 (finding CFTC did not have a legal interest in action because the relief requested was narrowly directed at defendant under Nevada law); *Cruz v. Doar*, 994 N.Y.S.2d 233, 240–41 (Sup. Ct. N.Y. Cnty. 2013) (finding respondent had failed to show that nonparty New York State Office of Temporary and Disability Assistance was a necessary party under CPLR § 1001 because petitioner's requested relief, including injunction, only involved respondent). For the same reason, there is no basis to conclude that the state court cannot grant complete relief between the parties without the CFTC.

Coinbase claims nevertheless that the CFTC has a purported "substantial interest" in this action because it submitted an amicus brief in the Ninth Circuit in support of Kalshi, a different entity. Notice of Removal ¶ 22. Yet, the CFTC's submission of an amicus brief in another action is insufficient to show that it has claimed a legal interest in the instant action. *See Calingo v. Meridian Res. Co., LLC*, No. 11-cv-628 (VB), 2012 U.S. Dist. LEXIS 175433, at \*8-10 (S.D.N.Y. Oct. 26, 2012). Nor does the CFTC's commencement of its own lawsuit against the

18

State of New York seeking to protect the "CFTC's ability to apply and enforce its own regulations and the federal CEA," *see* CFTC Complaint ¶ 12, provide a basis to conclude that the CFTC is a necessary party.  The need to "defend[] the validity of its own laws" is not a concrete interest requiring joinder as a necessary party.  *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 359 (2d Cir. 2015) (rejecting the State of New York's argument that its "interest[] in defending the validity of its own laws" made it a necessary party in action challenging the constitutionality of a state statute).

Coinbase has cited to no legal authority showing that a private actor can seek Section 1442 removal on behalf of a nonparty federal agency, and Coinbase's argument, if accepted, would drastically expand the reach of the federal officer removal statute by permitting private actors to preemptively remove an action that asserts only state law claims simply by asserting that a federal agency has a presumed interest in an action and must be joined.[7]

Accordingly, Coinbase has failed to show it is entitled to remove this action under the federal officer removal statute.

## IV.     New York Is Entitled to the Expedited Relief Afforded Through Its Proceeding Authorized Under New York State Law

OAG brought this Special Proceeding to protect vulnerable New Yorkers and others who are being victimized by Coinbase's unlicensed and illegal gambling activities.  OAG is entitled to obtain swift relief by filing a special proceeding under Executive Law § 63(12) "pursuant to a state statute that specifically selects the New York State Supreme Court as the proper forum for such a suit."  *DailyPay, Inc.*, 2025 U.S. Dist. LEXIS 186217, *20-21 (citations omitted).  "In a

---

[7] Coinbase does not and cannot attempt to argue that it is a federal officer or that it was acting under the CFTC when it engaged in the misconduct at issue in the action.  *See Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*, No. 26-cv-00089-MMD-CLB, 2026 U.S. Dist. LEXIS 41671, at *5-6 (D. Nev. Mar. 2, 2026) (finding that defendant failed to show it was acting under the CFTC as required for federal officer removal by self-certifying its event contracts or by regulating access to its market).

19

state special proceeding, the State has at its disposal certain procedures designed to facilitate a summary disposition of the issues presented — procedures that the State would be forced to forgo were the case removed to federal court." *Id.* (citing *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) (describing the differences between a New York special proceeding and an ordinary civil action)).  Moreover, this Special Proceeding "was brought by the State itself, and therefore 'the claim of sovereign protection from removal' is 'at its zenith.'" *Id.* (citing *In re Standard & Poor's*, 23 F. Supp. 3d at 392).

## V.    The Court Should Award Petitioner Fees and Costs

The Court should award costs and attorneys' fees to Petitioner pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, incurred as a result of the removal."

Attorneys' fees may be awarded under § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).  As the Supreme Court has observed, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources.  Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id*.  "District courts have considerable discretion and flexibility to fashion awards of costs and fees to deter removals sought for an improper purpose." *Dela Rosa v. 610-620 W. 141 LLC*, 2009 U.S. Dist. LEXIS 55058, at *15 (S.D.N.Y. June 24, 2009).

 "An award [of fees and costs] is appropriate where 'the removal basis asserted . . . was contrary to overwhelming authority.'" *Counsel Fin. Holdings v. Law*, No. 20-CV-01698(LJV)(JJM), 2021 U.S. Dist. LEXIS 16920, at *5 (W.D.N.Y. Jan. 27, 2021) (quoting

20

*Wallace v. Wiedenbeck,* 985 F. Supp. 288, 291 (N.D.N.Y. 1998)); *Akers v. Barrett*, No. 14-cv-501-A, 2014 U.S. Dist. LEXIS 104389, at *9 (W.D.N.Y. July 30, 2014) (same); *Sea Green Holdings, LLC v. Angera*, No. 3:18-cv-0264 (MPS), 2018 U.S. Dist. LEXIS 61275, at *9 (D. Conn. Apr. 11, 2018) (court should impose fees and costs "to deter improper removal where the grounds for removal are contrary to overwhelming authority or without any reasonable basis." (quotations omitted)).  Here an award of costs and fees is warranted because Coinbase's arguments for removal have been repeatedly rejected by district and circuit courts across the country, and Coinbase's notice of removal did not cite a ***single decision*** in which a matter was found to have been properly removed in similar circumstances.  Coinbase's argument in favor of removal is contrary to overwhelming authority, is therefore objectively unreasonable, and as such Petitioner should be awarded reasonable attorneys' fees and costs of litigating this motion.

## CONCLUSION

For the reasons set forth above, the Court should remand this action back to the Supreme Court of the State of New York, County of New York.

Dated: New York, New York
      May 1, 2026

                                     Respectfully submitted,

                                     LETITIA JAMES,
                                     Attorney General of the State of New York

By: */s/ K. Brent Tomer*
       K. Brent Tomer
       Alejandra de Urioste
       Nina M. Varindani
       Assistant Attorneys General
       Investor Protection Bureau
       28 Liberty Street, 21st Floor
       New York, New York 10005
       Tel: 212-416-8081
       Brent.Tomer@ag.ny.gov
       Alejandra.deUrioste@ag.ny.gov
       Nina.Varindani@ag.ny.gov

       Tanya Trakht
       Senior Enforcement Counsel
       Investor Protection Bureau
       Tanya.Trakht@ag.ny.gov

       *Counsel for the People of the State of New York*

22

**WORD COUNT CERTIFICATION**

In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Practices, I hereby certify that the Memorandum of Law in Support of Petitioner's Motion to Remand contains 6835 words (including footnotes), exclusive of cover page, tables of contents and authorities, and signature block, as established using the word count function of Microsoft Word.

/s/ *K. Brent Tomer*
K. Brent Tomer
Assistant Attorney General

23